Johnny Lee WEDLOW, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–90–00090–CR, 05–90–00091–CR.

Court of Appeals of Texas,
Dallas.

April 4, 1991.

Johnny Wedlow, pro se.

John G. Tatum, Dallas, for appellant.

Vicki Vellenga Solomon, April E. Smith, Dallas, for appellee.

Before ENOCH, C.J., and LAGARDE and BURNETT, JJ.

## OPINION

ENOCH, Chief Justice.

Johnny Lee Wedlow appeals his convictions for aggravated robbery and burglary of a habitation. A jury assessed punishment, enhanced in each case by two prior convictions, at life and fifty years' confinement, respectively. Because we agree that the trial court erred by denying appellant's motion for severance, we reverse the judgments of the trial court and remand the causes for proceedings consistent with this opinion.

Appellant's attorney filed an *Anders*[1] brief in which he raised four arguable points of error and concluded that the appeals were wholly frivolous and without merit. A copy of counsel's brief was delivered to appellant, and appellant was advised that he could examine the appellate record and that he had a right to file a pro se brief. Appellant filed a pro se brief raising four points of error.

### Facts regarding aggravated robbery

The complainant, Daniel Jimmy Cuellar, testified that on April 22, 1989, he was the manager for the Parkside Place Apartments, and that at about 4:00 a.m. his girlfriend saw a light on in a vacant apartment. Cuellar had recently evicted the tenants of that apartment for selling drugs. Cuellar went to the apartment and chased away some trespassers who were knocking on the door of the apartment. He went to the apartment complex office and retrieved the key to the apartment and his handgun. He then returned to the apartment and, after determining that the apartment was empty, he sat down to see what would happen. Several people knocked on the door looking for drugs. Cuellar dozed off. He was awakened by the front door of the apartment being kicked in and by a voice yelling, "Police, freeze and drop the gun." Cuellar did as he was told; he dropped the gun and lay spread-eagled on the floor.

---

1. *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

The person claiming to be a police officer, whom Cuellar identified as the appellant, took Cuellar's wallet and began kicking him in the face and demanding drugs. Cuellar struggled to his feet and told appellant that he didn't have any drugs. As Cuellar ran from the apartment, appellant pointed Cuellar's gun at him and pulled the trigger. Because Cuellar had the gun on safety, it would not fire.

Dallas police officer Wayne Nichols testified that he responded to the call regarding the assault on Cuellar. He said that Cuellar told him that he had been assaulted by a person claiming to be a police officer and that his .25 semi-automatic pistol was taken. He related that Cuellar said appellant aimed the gun at him and attempted to shoot him but could not because the gun was on safety.

### Facts regarding burglary of a habitation

Ricky Smith testified that, as he was driving home from work at approximately 6:45 a.m. on April 22, 1989, he saw a black man with a beard attempting to break into the front of a trucking business. Smith pulled into a nearby Stop–N–Go and called the police. Dallas police officer Christopher Allen testified that he responded to Smith's burglary in progress call. When Officer Allen arrived at the trucking business, he came upon a house that sat out in front of the trucking business and saw that one of the house's doors had been kicked in and was ajar. He called for backup help and watched two sides of the house while his partner watched the other two sides. As the backup units arrived, appellant ran out of the house and Officer Allen arrested him. Dallas police officer Ronald Caldwell, one of the backup officers, searched the area after appellant was arrested and discovered Cuellar's .25 semi-automatic pistol underneath some bushes on the north side of the house. Daniel Carl Coleman testified that he lived in a house which was located in front of the trucking company. He said that, when he returned home at approximately 9:00 or 10:00 a.m. on April 22, 1989, he discovered that his home had been burglarized.

Responding to the prosecution testimony in these cases, appellant testified that he was drunk because he had been at a party and that he and two men, whose names he did not know, went to the Parkside Apartments at around 2:00 a.m. on April 22, 1989, to buy marijuana. According to appellant, Cuellar answered the door and let in the two men. Appellant remained outside the apartment. Appellant heard shots and went into the apartment. He saw Cuellar running toward the back of the apartment. One of the men had a gun, and the other man was struggling to prevent the person with the gun from shooting Cuellar. Appellant and the two men left the apartment. One of the men had the gun. Appellant and the two men went back to the Pecan Tree Apartments, drank some more and discussed what to do with the gun. One of the men had a friend on Denton Drive, so they decided to take the gun to the friend. As they were walking up Denton Drive, they saw a car coming down the street with no headlights on. They assumed it was the police and hid. The police discovered appellant in some bushes. Appellant denied entering any building or habitation. Appellant testified that some of what was written in a signed statement which he gave to the police after he was arrested was inaccurate.

### Sufficiency of the Evidence

■ Appellant's attorney, in two arguable points of error, challenges the sufficiency of the evidence to support appellant's convictions for burglary of a habitation and aggravated robbery. He contends that the evidence was insufficient to show: that appellant used or exhibited a deadly weapon during the robbery; that the building which was burglarized was a "habitation"; and that appellant was the person who entered the "habitation." In determining the sufficiency of the evidence, this Court's inquiry is limited to determining whether, evaluating all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt.

*Butler v. State,* 769 S.W.2d 234, 238 (Tex. Crim.App.1989).

■■■ Our review of the evidence shows that it was sufficient to permit any rational trier of fact to conclude beyond a reasonable doubt that, during the robbery, appellant used or exhibited a "deadly weapon, to wit: a firearm," as alleged in the indictment. A pistol is, by definition, a firearm, and a firearm is per se a deadly weapon. *See* TEX.PENAL CODE ANN. § 46.01(3) (Vernon 1974); TEX.PENAL CODE ANN. § 1.07(a)(11)(A) (Vernon 1974). Also, when viewed in the light most favorable to the verdict, the evidence is sufficient to permit the fact finder to conclude beyond a reasonable doubt that the building which appellant entered was a "habitation." *See* TEX.PENAL CODE ANN. § 30.01(1) (Vernon 1989); *see generally Blankenship v. State,* 780 S.W.2d 198 (Tex.Crim.App.1989); *Soliz v. State,* 785 S.W.2d 438 (Tex.App.—Corpus Christi 1990, no pet.). Finally, in addition to the facts previously recited, we note that an expert testified that muddy footprints on the house's doors matched the prints made by the tennis shoes which Officer Allen took off appellant's feet when he arrested appellant. We hold, viewing the evidence in the light most favorable to the verdict, that the evidence was sufficient to support any rational trier of fact's determination that appellant entered, and ran from, the habitation. We overrule appellant's attorney's third and fourth arguable points of error.

*Appellant's motion for severance*

■■■ Appellant's attorney's first arguable point of error and appellant's first pro se point of error are identical. Both allege that the trial court erred by denying appellant's request to sever the trial of the aggravated robbery from the trial of the burglary of a habitation. Appellant was indicted separately for each offense. The indictments bear different trial court cause numbers. The records contain two jury charges and two judgments. Prior to the impaneling of the jury, appellant moved the court to try the two cases separately due to the prejudicial effect of the facts of one

case tainting the defense of the other case. The trial court denied appellant's motion. The State concedes that the trial court erred by refusing to grant appellant's motion to sever the cases. However, the State argues that appellant was not harmed by the error, and appellant's attorney's *Anders* brief contains no harm analysis of this point.

At the outset, we note that both parties incorrectly rely upon section 3.04(a) of the penal code. *See* TEX.PENAL CODE ANN. § 3.04(a) (Vernon 1974). This section provides:

> *Whenever two or more offenses have been consolidated under Section 3.02 of this code,* the defendant shall have a right to a severance of the offenses.

TEX.PENAL CODE ANN. § 3.04(a) (Vernon 1974) (emphasis added). Section 3.02 of the penal code provides, in pertinent part:

> (a) A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode.
>
> (b) When a single criminal action is based on more than one charging instrument within the jurisdiction of the trial court, the state shall file written notice of the action not less than 30 days prior to the trial.

TEX.PENAL CODE ANN. § 3.02 (Vernon 1974). This statute authorizes several offenses to be joined in a single trial if the State files a written notice at least thirty days prior to trial and if the *offenses arose out of the same criminal episode. See Smith v. State,* 575 S.W.2d 41 (Tex.Crim.App. [Panel Op.] 1979). Additionally, in the absence of a written notice of joinder as required by section 3.02, a single prosecution on multiple indictments does not constitute "one criminal action." *Smith,* 575 S.W.2d at 42; *Carghorn v. State,* 549 S.W.2d 196, 197 (Tex.Crim.App.1977); *Laporte v. State,* 800 S.W.2d 270 (Tex.App.—Houston [14th Dist.] 1990, pet. filed); *McCullen v. State,* 659 S.W.2d 455, 458 (Tex.App.—Dallas 1983, pet. ref'd). Here, the State did not file a written motion for joinder under section 3.02. Accordingly, because the indictments here were not "consolidated or joined for trial under Section 3.02 of this

code," appellant's right to a severance under section 3.04 was not triggered. *Compare Overton v. State,* 552 S.W.2d 849, 850 (Tex.Crim.App.1977) *and Waythe v. State,* 533 S.W.2d 802, 804 (Tex.Crim.App.1976).

However, both parties also cite severance cases dealing with a defendant's right to severance when the State prosecutes several indictments before the same jury. Texas courts frequently confuse a defendant's statutory right to severance as set forth in penal code section 3.04, which is triggered when the State combines multiple indictments stemming from a single criminal episode into one criminal action, with a defendant's right to severance when the State decides to prosecute indictments arising out of the same, or different, criminal episodes in a single jury trial. Entirely different case law governs a defendant's right to severance in this latter situation.

▆▆▆ The following is the authority governing our decision in this case. A defendant waives his right to severance if he agrees to, or fails to object to, prosecution of multiple indictments in a single trial. *See Milligan v. State,* 764 S.W.2d 802, 803 (Tex.Crim.App.1989); *Johnson v. State,* 509 S.W.2d 322, 323 (Tex.Crim.App. 1974); *Royal v. State,* 391 S.W.2d 410, 411 (Tex.Crim.App.1965). However, if a defendant timely objects to the trial of multiple indictments in a single trial, he is entitled to a severance. *See Ex parte Quintanilla,* 151 Tex.Crim. 328, 207 S.W.2d 377, 378 (1947) ("We think that the trial of all four separate cases before the same jury at the same time over relator's objection deprived him of the valuable right of a trial before an impartial jury in contravention of Art. 1. Sec. 10, of the State Constitution."); *Guia v. State,* 723 S.W.2d 763, 767 (Tex.App.— Dallas 1986, pet. ref'd); *see also White v. State,* 495 S.W.2d 903, 905 (Tex.Crim.App. 1973) ("The record reflects that the appellant was carefully advised that he had a right to separate trials in each of the cases.... Whether the three different charges should be tried separately or together was a matter of strategy, tactics and judgment to be decided upon by the appellant and his counsel."). Here, appellant timely objected. Consequently, the trial court erred by overruling appellant's motion for severance.

▆▆▆ We must now address the effect of this error. As mentioned, the State contends that we must apply a rule 81(b)(2) harm analysis and that the error was harmless. *See* TEX.R.APP.P. 81(b)(2). In *Guia,* this Court held that "when an accused adequately advises the trial court by objection, request, or motion to sever of his opposition to being tried on more than one indictment at the same time before the same jury, the trial court must sever." *Guia,* 723 S.W.2d at 768. In reversing and remanding in *Guia,* although rule 81(b)(2) of the rules of appellate procedure was in effect, no harm analysis was applied. *Id.*

Recently, the Court of Criminal Appeals examined the type of error that is not subject to a harmless error analysis. *Sodipo v. State,* No. 1390–88 (Tex.Crim.App. September 12, 1990). The Court concluded that the ten-day time period to be given a defendant when the State amends an indictment under article 28.10 is "mandatory" and that the trial court's failure to grant the defendant a ten-day time period to prepare for trial on the amended indictment "cannot be subjected to a harm analysis in any meaningful manner, because the record will not reveal any concrete data from which an appellate court can meaningfully gauge or quantify the effect of the error." *Id.,* slip op. at 5. The Court reasoned as follows:

[T]he United States Supreme Court has made the distinction between its federal harmless error rule and the use of an automatic reversal rule by focusing on the reliability of the outcome of the trial. Those rights that require automatic reversal, according to the Court, are so basic or fundamental that in their absence "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair." *Rose v. Clark,* 478 U.S. 570 [106 S.Ct. 3101, 92 L.Ed.2d 460] (1986). The distinctive characteristic of

these violations is that it is extremely difficult to know whether they might have affected the outcome, or the likelihood that they have influenced the outcome is so strong that it is not worth expending the judicial resources necessary to evaluate the effect of the error in particular cases.

*Sodipo*, slip op. at 5.

We recognize that the scope of *Sodipo* is limited. *See Sodipo*, slip op. at 5 ("We do not decide today whether all 'mandatory' statutes are immune to a harmless error analysis."). However, *Sodipo* is instructive on the *type* of error which is not easily subject to a harm analysis. As acknowledged in *Sodipo*, procedural errors are particularly not suited to a harm analysis. *Id.* The Court quoted:

In cases involving breach of many procedural statutes the record will contain no concrete data from which an appellate court can meaningfully gauge the likelihood that the error did or did not contribute to the conviction or punishment of the accused.

*Id.* quoting *Roberts v. State*, 784 S.W.2d 430, 435 (Tex.Crim.App.1990). The error which occurred in this case, the trial court's failure to grant appellant's motion for severance, is a procedural error. Although the error is not in violation of a mandatory statute, it is a pretrial error which permeated the entire trial: how the parties voir dired the jury; the witnesses called by both sides; the testimony elicited from witnesses; the admissibility of evidence; appellant's decision to testify; and even argument at the punishment phase of the trial. The right which is implicated by this error is appellant's constitutional right to a trial before a fair and impartial jury. *See Ex parte Quintanilla*, 207 S.W.2d at 378. There is no concrete data from which we can meaningfully gauge or quantify the effect of the error. We have no way of determining whether the error was harmless. The impact of two indictments, two complainants and two verdicts upon the jury is unquantifiable. To many jurors, two complainants are more believable than one. The jury may have believed that if appellant committed one of the offenses, he

must have committed the other. We conclude that the trial court's failure to grant appellant's timely motion for severance constitutes error of a type which is not subject to a harm analysis.

■ Alternatively, we attempt to apply a harm analysis. As previously discussed, the error is a pretrial error which influenced the entire trial. We must focus not on the propriety of the outcome of the trial, but on the integrity of the process leading to the conviction. *See Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989). We must focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making. *Id.* at 588. Where there is error in the proceedings below, the intendment of rule 81(b)(2) of the rules of appellate procedure is to mandate reversal unless it can be held "beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." *See* TEX.R.APP.P. 81(b)(2).

■ The State argues that the evidence of each crime was "res gestae" of the other crime. Consequently, the State argues that, because evidence of each offense would have been admissible even if the cases were tried separately, the error is harmless. The State misconstrues the harmless error standard reiterated in *Harris*. We must focus on the "integrity of the process" leading to appellant's conviction. Even if the State is correct and the evidence of each offense would be admitted at the trial of the other offense, nonetheless, the error tainted the "integrity of the process" by forcing appellant to defend himself against two charges at the same time before the same jury. We have attempted to examine the record to uncover the damaging impact of the error and we cannot conclude beyond a reasonable doubt that the error in this case made no contribution to appellant's conviction.

The State admits that the trial court erred in overruling appellant's motion for a severance. We agree. Because we have determined that this type of error is not

subject to a harm analysis, and alternatively, that the error was harmful, we reverse the judgments of the trial court and remand the causes for further proceedings in accordance with this opinion. In light of our disposition of appellant's first pro se point of error and appellant's attorney's first arguable point of error, we need not consider appellant's remaining pro se points of error nor appellant's attorney's remaining arguable point of error.