Joe Louis THEUS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. C14–90–00717–CR,
C14–90–00720–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 1, 1993.

DeEdward J. Greer, Houston, for appellant.

Linda A. West, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## MAJORITY OPINION ON REMAND

ROBERTSON, Justice.

Appellant was indicted for possession and delivery of less than twenty-eight grams of cocaine, and was found guilty on both counts by a jury. The trial court assessed punishment at thirty-five years imprisonment for possession of the controlled substance and twenty-five years for its delivery. On original submission, the majority of this court rejected appellant's arguments that the trial court improperly admitted evidence of an extraneous offense, and we affirmed the judgment of the trial court. *Theus v. State*, 816 S.W.2d 773 (Tex.App.—Houston [14th Dist.] 1991).

Appellant filed petition for discretionary review and the court of criminal appeals reversed and remanded this cause to this court to determine whether appellant was harmed by the improper admission of a prior conviction. *Theus v. State*, 845 S.W.2d 874, 882 (Tex.Crim.App.1992). We conclude the error was harmless beyond a reasonable doubt and affirm the judgment of the trial court.

Appellant complains of the trial court allowing the state to bring forward testimony regarding his prior conviction for arson. The state questioned appellant about this prior conviction in an attempt to impeach his credibility. The state also questioned appellant's witnesses concerning their knowledge of his prior conviction. Prior to trial, appellant filed a motion asking the trial court to not allow testimony regarding this conviction because the unique facts surrounding the conviction were more prejudicial than probative and the conviction had no bearing on truth or veracity. After a hearing, the trial court denied this motion.

The court of criminal appeals did not find that this prior conviction was per se inadmissible. *Theus*, 845 S.W.2d at 879. The court stated that Rule 609 of the Texas Rules of Criminal Evidence provide that a felony conviction *shall* be admissible for impeachment purposes once the trial court decides the probative value of the conviction outweighs its prejudicial effect. *Id.* The court then considered five factors to determine that appellant's arson conviction

had very little probative value concerning his credibility. *Id.* at 881. The court looked at (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness' subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue.

The court found that four of the factors favored admissibility. The conviction would not cause the jury to perceive appellant as a drug dealer because the two crimes were not similar; it occurred recently relative to the charged offense; appellant's testimony and credibility were important, as the defense presented was mistaken identity, and the trial pitted the testimony of the officers against that of appellant and his character witnesses. *Id.* However, the court found the unique circumstances of this case compelled a finding that the lack of impeachment value overrode the other four factors. *Id.*

The court stated the arson conviction had so little probative value on the question of appellant's credibility and had much prejudicial effect, and the trial judge failed to dispel the prejudicial effect when presented with the opportunity.[1] *Id.* 881–82. It is in this posture that the case was remanded back to this court to conduct a harm analysis pursuant to Rule 81(b)(2) of the Texas Rules of Appellate Procedure.

1. Appellant asked for the opportunity to explain to the jury the circumstances behind his arson conviction. Appellant feared that the mention of an arson conviction would conjure up images of burning buildings and insurance fraud. The trial court denied his request to explain the underlying facts.

The court of criminal appeals agrees with appellant that the trial court's denial of this request increased the prejudicial affect against him. *Theus*, 845 S.W.2d at 882. Both appellant and the court of criminal appeals seem to believe that images of burning buildings and insurance fraud are worse than the true facts behind his conviction. It is beyond this court's comprehension how the facts would have served appellant.

Appellant, after a domestic dispute with his girlfriend, took a beer can full of gasoline and poured it through the postal slot of her door. He then set fire to the postal slot. The fire did not spread and was put out before much damage occurred to the residence. Appellant was not ordered to pay restitution and was placed on probation, which was later revoked.

Appellant and the court of criminal appeals seem to think that this was a minor crime. However, the only reason more damage did not occur was because the fire was quickly extinguished. How could appellant been helped by showing that he attempted to burn down the residence of his girlfriend with the great possibility that she could have died in the resulting fire? A clearer reading of the facts that appellant so desperately wanted to place before the jury might have led them to believe that he was lucky that he was not previously charged with murder or attempted murder.

In applying the harmless error rule, our focus is not on the propriety of the outcome of the trial, but on the integrity of the process leading to the conviction. *Harris v. State*, 790 S.W.2d 568, 584–87 (Tex.Crim.App.1989); TEX.R.APP.P. 81(b)(2). Consequently, we must examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the state and its collateral implications. *Id.* at 587. In addition, we must consider how much weight a juror would probably place upon the error and whether declaring the error harmless would encourage the state to repeat it with impunity. *Id.* If the error is of a magnitude that it disrupted the jury's orderly evaluation of the evidence, no matter how overwhelming such evidence might have been, then the conviction is tainted. *Id.* at 588. It is the effect of the error and not the other evidence that must dictate the reviewing court's judgment. *Id.*

In looking at the source and nature of the error, this court must determine whether the state intended to taint the trial in offering inadmissible evidence. *Higginbotham v. State*, 807 S.W.2d 732, 735 (Tex.Crim.App.1991); *Harris*, 790 S.W.2d at 588. The record before us does not support a finding that the state intended to taint the proceedings. The prosecutor argued a fair reading of the admissibility of prior convictions pursuant to Rule 609. The court of criminal appeals opinion stated that even though four factors weighed in favor of admissibility of this conviction, that it was the unique facts of the case that compelled a finding that it was improperly admitted. *Theus*, 845 S.W.2d at 881.

We must next look to see if the improper evidence was emphasized by the state. Again we do not find this factor weighs in favor of a finding of harm. In two hundred sixty-six pages of testimony, the questioning regarding this offense would not fill six pages. In nine and one half pages of cross-examination of appellant, just one and one half discussed the prior conviction. This could have been confined to less than one page but appellant stated he wasn't convicted and explained that he had been put on probation. The state then inquired about the success of his probation. Of appellant's five witnesses, four were asked about the prior conviction only after a thorough cross-examination about the facts of the charged offense or after establishing that the witness had no knowledge about the charged offense.

During nineteen pages of closing argument, the prosecutor referred to appellant's prior conviction or called him an ex-convict just three times. While the prosecutor did imply the prior conviction of appellant weakened his credibility, it was not the main focus of the argument. The prosecutor focused on the reliability of the officers who made the buy and testified at trial. The prosecutor spent a great deal of time discrediting the only witness who was at the scene of the sale. A great majority of the remaining argument focused on the police and the credibility of their testimony. The prosecutor spent close to six pages rebutting the argument of defense counsel regarding the officers use of an offense report and the fact that they were mistaken in arresting appellant.

We next focus on the probable collateral implications of the error. This factor contemplates the disparaging of a sole defense. *Higginbotham*, 807 S.W.2d at 732; *Harris*, 790 S.W.2d at 585. Appellant's defense was a claim of mistaken identity. The introduction of the prior conviction did not malign this defense. While it may have affected his credibility, the trial, with or without the prior conviction, would still focus on his word and the testimony of his witnesses against the testimony of the state's witnesses. Of appellant's five witnesses, only one, Frederick Clark, was actually in the building where the sale took place. Clark, who was also arrested at the scene, testified that he did not see appellant sell drugs to the officer. However, the officer who made the purchase testified that he later saw Clark at the station but did not recognize him because he had no dealings with him. Appellant introduced no evidence that would indicate Clark saw the buy that involved the officer.

Two other witnesses brought by appellant were near the scene but not in the vicinity when the buy took place. One was in a liquor store and the other arrived after the bust. Appellant's two remaining witness were strictly character witnesses and their testimony did not directly bolster his defense of mistaken identity. Appellant testified that he did not sell the drugs but the officer who made the buy testified that he positively identified appellant at the scene six minutes after the buy and again that evening at the station. The evidence did not support appellant's claim of mistaken identity but not because of the introduction of his prior conviction.

We must next examine the record to try and determine the probable weight placed on the error by the jury. *Higginbotham*, 807 S.W.2d at 737; *Harris*, 790 S.W.2d at 587. The record shows that the improper evidence was discussed in only six of two hundred sixty-six pages of testimony. The state did not place added emphasis on the prior conviction during closing argument. While the impact of the conviction affected the credibility of appellant and his witnesses, the state's case-in-chief and its primary focus during argument was on the testimony of the officers and the credibility of that testimony. There is nothing to indicate the jury would place a greater emphasis on appellant's prior conviction to reach a finding of guilt. We can make a determination of this factor by looking at the dissipating effect of other evidence on the issue for which the jury would have considered the erroneously admitted testimony. *Montgomery v. State*, 821 S.W.2d 314, 325 (Tex. App.—Dallas 1991, pet. ref'd). As discussed above, four of appellant's five witnesses could offer no direct testimony regarding the sale of cocaine to the officer. The remaining witness' credibility was properly impeached with his own prior convictions. Additionally, his testimony did not include any information about who actually made the sale. He said he did not see appellant make a sale but he did not even acknowledge that he saw the sale take place, and if he did, who he saw make the sale.

Appellant testified that he did not sell the cocaine to the officer. The officer testified that he identified appellant after a face to face buy. Appellant's credibility, while not indirectly challenged without the prior conviction, would surely be under scrutiny by any jury for possible self-serving statements. Also, the court of criminal appeals recognized that the differences between the two offenses would not lead the jury to perceive the appellant as a habitual drug dealer. *Theus*, 845 S.W.2d at 881.

Finally, we must determine whether declaring the error harmless would encourage the state to repeat it with impunity. *Higginbotham*, 807 S.W.2d at 737–38; *Harris*, 790 S.W.2d at 587. The court of criminal appeals recognized that admission of this prior conviction was improper because of the unique facts of the case. *Theus*, 845 S.W.2d at 874. Because of this, we do not believe that a harmless error finding in this case will lead the state to repeat this error with impunity. We further believe that the court's adoption of the five factors derived from federal case law will help prosecutors make a proper analysis before seeking admission of prior convictions.

Employing the considerations set out in *Higginbotham* and *Harris*, we conclude beyond a reasonable doubt, the state's use of appellant's prior conviction did not contribute to the jury's verdict of guilt. We therefore hold that the error is harmless as to the jury's determination of appellant's guilt. *See* Tex.R.App.P. 81(b)(2).

The judgment of the trial court is affirmed.

SEARS, Justice, dissenting.

I again respectfully dissent.

The Court of Criminal Appeals reversed the first majority opinion which held that the introduction of the extraneous offense was not error. In finding it to be error, the Court held that it was not only an abuse of discretion to allow the State to introduce evidence of Appellant's prior arson conviction, but that the error was compounded by the Court's refusal to let Appellant tell the

jury his side of the story and thereby lessen the impact the extraneous offense would have had on the jury.

The majority opinion weighs the number of "pages" in the record which mention the extraneous offense, compares that number to the total number of pages, and then reaches the conclusion that the error was harmless beyond a reasonable doubt. The majority next looks at the facts Appellant wanted to offer to the jury to explain the circumstances of the arson charge. The majority then concludes that *if* the jury had heard the explanation, the appellant would have been in greater trouble than he was without the explanation. Weighing the harm in terms of pages, and stepping into the shoes of the jury to determine how they *would* have reacted to certain evidence *if* it had been presented to them, is certainly a novel approach. However, in order to affirm this conviction and overlook the error that is now found to exist, we must do more than weigh pages and guess at a jury's reaction to evidence it never received.

The majority seems to focus on whether they would have been swayed by this error—that is not the proper test. We must instead look at the *integrity* of the process, not to the other evidence of guilt, and we must determine if it was *possible* that the jurors may have been prejudiced against this appellant as a result of the error committed by the trial court. *See Wedlow v. State*, 807 S.W.2d 847 (Tex.App.—Dallas) *pet ref'd per curiam*, 814 S.W.2d 750 (Tex. Crim.App.1991). Also, whether the jury reached the correct result is *not* the proper test. The reviewing court must instead determine whether: the trial was essentially a fair trial; the error contributed to the jurors' decision making processes; and, declaring the error harmless would encourage the State to repeat it with impunity. *Harris v. State*, 790 S.W.2d 568 (Tex.Crim. App.1989).

In the remand, the Court of Criminal Appeals held that the trial court not only erred in admitting the extraneous offense, but also erred in refusing to allow Appellant an opportunity to *explain* the circumstances of the offense, and, held that if the explanation had been allowed, "the prejudicial effect of admitting the conviction would have been greatly lessened." I agree.

When we focus on the integrity of the process, rather than the evidence of guilt, it is not reasonable under these facts to find beyond a reasonable doubt that there is *no possibility* that the error prejudiced the jurors' decision making processes. The only purpose the State could possibly have had in introducing evidence of the arson was to prejudice the jury against this appellant and to attack his character. The majority opinion acknowledges that the State called Appellant an "ex-convict" three times in argument. If the trial court had not erred, the State could not have called him an ex-con even once. Also, the majority acknowledges that the State asked four of Appellant's five witnesses about the arson conviction—asking even one was error. When the State continued to beat Appellant over the head with the "ex-con" stick, it is not unreasonable to believe that it "possibly" had an effect on the jury. If that "possibility" of harm exists, then Appellant is entitled to a new, clean, fair trial.

I would reverse the judgment of the trial court and remand for a new trial.