

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-0469-15, PD-0470-15, PD-0471-15, & PD-0472-15

**JOHN B. ISBELL, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

**KEASLER, J., delivered the opinion of the Court, in which MEYERS, JOHNSON, HERVEY, ALCALA, RICHARDSON, YEARY, and NEWELL, JJ., joined. KELLER, P.J., not participating.**

### O P I N I O N

A jury convicted John Isbell of deadly conduct, two counts of aggravated assault on a public servant, and evading arrest or detention with a vehicle. On appeal, Isbell argued the judge erred in failing to instruct the jury on the accomplice-witness rule. The court of appeals reversed and remanded all four convictions for new trials.[1] On review of the non-

---

[1] *Isbell v. State*, Nos. 02-14-00124-CR, 02-14-00125-CR, 02-14-00126-CR, & 02-14-00127-CR, 2015 WL 1407749, at *4 (Tex. App.—Fort Worth Mar. 26, 2015) (mem.

accomplice evidence, we hold that Isbell was egregiously harmed in two of the four causes tried together, but was not egregiously harmed in the other two. We therefore affirm the court of appeals' judgments in the latter two causes, but reverse and remand the remaining causes for additional proceedings.

**I.**

At around 7:30 am on July 17, 2012, Azle Police Officer Steven Graves conducted a routine license-plate check on a Jeep. The check returned a hit on an outstanding warrant for Jonathan Garrett, a white male born in 1972. A young white female drove the Jeep and a middle-aged white male, whom Officer Graves believed could have been Jonathan Garrett, sat in the passenger seat. Based on this belief, Officer Graves initiated a traffic stop. The female driver signaled as if she was pulling over but failed to stop. The male passenger leaned over the center console, turned around to face the back window, and pointed a shotgun at Officer Graves. Officer Graves immediately swerved and called for back-up. He pursued the Jeep on his own because no other officers were near his location.

Officer Graves followed the Jeep as it continued to evade him at high speed. While in pursuit, he saw the passenger lean out the passenger side window with a shotgun "waving it around . . . pointing it back at [him]," but he neither saw nor heard the passenger fire the shotgun. Officer Graves eventually lost sight of the Jeep and was unable to locate the Jeep again. A bulletin later informed officers both in Azle and Haltom City about these events

op., not designated for publication).

and the driver's and passenger's at-large status.

Two motorists were also on the road on July 17 near the incident. Both testified that they noticed a car following them closely or riding their bumper. Both motorists saw the car speeding erratically and aggressively in and out of traffic, yet neither could describe the driver or the passenger with any detail.

The two motorists heard a "loud boom" and assumed it was a tire blowout. After hearing the loud boom, one motorist pulled over and "noticed a male passenger hanging outside of the window with a shotgun." She then realized the loud boom was a gun shot. The other motorist did not realize the loud boom was a gun shot until a few days later when she noticed that her rear bumper had some paint chipping and bullet holes. Azle Police later recovered the shotgun, a spent shell, and a damaged shell from the highway. A firearms expert testified the spent shell was fired from the recovered shotgun.

The next day, July 18, 2012, Haltom City Police Officer Sergeant Phillips discovered the same Jeep mentioned in the bulletin on a side street. After verifying the Jeep's license plate, Sergeant Phillips called for another officer to drive by in an unmarked car to confirm his verification. With no arrest warrant for the suspects, Sergeant Phillips called Azle Police Department to decide what to do with the vehicle. While he was on the phone, the Jeep started to drive away. Sergeant Phillips attempted to pull the Jeep over, but it accelerated and pulled away. Along with four other officers, Sergeant Phillips pursued the Jeep in a high-speed chase through residential areas. During the chase, the Jeep's driver disregarded traffic-

control devices and endangered other motorists. At one point, the driver drove into oncoming traffic and rammed a police car with an officer in the driver's seat. The vehicle chase concluded when the Jeep crashed into a mailbox. Both the male driver and the female passenger exited the car and fled. After a brief pursuit on foot, Sergeant Phillips and Officer Gilley arrested the male driver, later identified as Isbell, and the female passenger, Jamie Haney. At Isbell's trial, Haney identified Isbell as the male passenger with her on July 17. She also testified that the shotgun had "gone off" when Officer Graves pursued them. She later pleaded guilty to evading arrest or detention in a vehicle.

A jury convicted Isbell of evading arrest or detention with a vehicle, aggravated assault on a public servant with a vehicle, aggravated assault on a public servant with a shotgun, and deadly conduct. The trial court sentenced him to twenty, forty-five, forty-five, and twenty years' confinement, respectively, to run concurrently. Isbell appealed and argued that the judge erred by failing to include an accomplice-witness jury instruction in each jury charge. The court of appeals agreed and found the error egregiously harmful in all four causes.[2] The State petitioned this Court to determine whether the court of appeals failed to consider the remaining corroborating evidence and erred when it reversed two of the convictions where the accomplice-witness rule did not apply. We granted review of both grounds.

---

[2] *Id.* at *3.

## II.

In its petition for discretionary review, the State did not contest the court of appeals' holding that it was error to omit the accomplice-witness instructions in the four separate jury charges. So we assume, without deciding, that the court of appeals correctly found trial error and address only whether the error resulted in harm.

Texas Code of Criminal Procedure Article 38.14 provides, "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."[3] In *Blake v. State*, we noted that "accomplice testimony implicating another person should be viewed with a measure of caution because accomplices often have incentives to lie such as to avoid punishment or shift blame to another person."[4] The accomplice-witness instruction is not designed to instruct the jury to give the accomplice testimony less weight than other evidence.[5] Instead, it informs the jury that it cannot use accomplice testimony unless there is also some non-accomplice evidence connecting the defendant to the offense.[6]

The appropriate harm analysis depends on whether the defendant timely objected to

---

[3] TEX. CODE OF CRIM. PROC. art. 38.14.

[4] 971 S.W.2d 451, 454 (Tex. Crim. App. 1998).

[5] *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).

[6] *Id.*

the submitted jury charge.[7] If the defendant timely objected to the jury instruction, reversal is required if there was some harm to the defendant.[8] But if the defendant did not timely object, we will reverse the conviction only if the error was so egregious and created such harm that the defendant did not have a fair and impartial trial.[9] Because Isbell did not object to the instructions' omission, we review the record for egregious harm.

"Under the egregious harm standard, the omission of an accomplice[-]witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'"[10] To determine the strength of non-accomplice evidence, we examine (1) its reliability or believability and (2) the strength of its tendency to connect the defendant to the crime.[11] We do so by eliminating the accomplice-witness testimony and reviewing the entire record for evidence that would tend to connect the defendant to the offense.[12] Such evidence must do more than show the offense was committed, but need not

---

[7] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

[8] *Id*.

[9] *Id*.

[10] *State v. Ambrose*, 487 S.W.3d 587, 598 (Tex. Crim. App. 2016) (quoting *Herron*, 86 S.W.3d at 632 and *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)).

[11] *Id*.

[12] *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997). *See Casanova v. State*, 383 S.W.3d 530, 534 (Tex. Crim. App. 2012).

directly connect the defendant to the crime or conclusively establish the defendant's guilt.[13]

### III.

An associate of both Isbell and Haney's testified that Isbell, Garrett, and Haney were present at his home in the early hours of July 17 so the associate could fix a broken rearview mirror on Garrett's Jeep. He testified that after he fixed the mirror they all left at 6:00 am, but he did not testify whether they all arrived or left in the Jeep connected with the offenses committed later that day. Although Officer Graves saw a male passenger in the Jeep point a shotgun at him, he was only able to describe the passenger as a middle-aged white male. While the other motorists driving on the road that day heard the shotgun blasts, they too were unable to describe the passenger. Even though Isbell was connected in some fashion with Garrett and his Jeep roughly an hour and half before the offenses' commission that day, no witness, other than Haney, identified Isbell as the passenger. We conclude that the non-accomplice evidence is decidedly weak in connecting Isbell to the July 17 deadly conduct and assault on a public servant offenses. Considering the entire record without the accomplice-witness testimony, the evidence fails to connect Isbell to the July 17 offenses and renders the State's overall case for conviction clearly and significantly less persuasive as to those offenses.

In contrast, the non-accomplice evidence connecting Isbell to the July 18 offenses is quite compelling. The evidence, including several officers' testimony and dash-cam video,

---

[13] *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999).

established that Isbell, with Haney beside him, led police on a high-speed chase. After ramming the Jeep into a police car while an officer was behind the wheel and crashing into a mailbox, Isbell and Haney abandoned the car and fled on foot. After a brief chase through a neighborhood, the two were apprehended. The officers positively identified Isbell as the Jeep's driver on July 18. The non-accomplice evidence is both credible and reliable, and it convincingly connects Isbell to the evading and assault on a public servant offenses committed on July 18.

The State argues that the evidence of Isbell's criminal acts on July 18 is sufficient to connect Isbell to the crimes committed on July 17 because on both days the same Jeep evaded police and endangered the officers. We disagree. The July 18 evidence did no more than invite the speculative conclusion that, because Isbell evaded the police on July 18 in the same car that evaded police on July 17, he must have committed the July 17 offenses. We conclude that this speculation insufficiently connects Isbell to the July 17 offenses.

We agree with the court of appeals that Isbell suffered egregious harm in connection with the July 17 offenses.[14] However, we disagree with the court of appeals' conclusion that the egregious harm regarding the July 17 offenses "permeated the entire trial," and therefore egregiously harmed Isbell in all four causes.[15] In his brief in the court of appeals, Isbell

---

[14] *See Isbell*, 2015 WL 1407749 at *3 (concluding that the error affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory).

[15] *Id.*

claimed that he was egregiously harmed because Haney's testimony was the only evidence the jury could have relied on to convict him of the assault on Officer Graves and the deadly-conduct charge—the July 17 offenses.[16]  He did not claim that he was harmed by the omission as it related to the July 18 offenses.  The court of appeals did not analyze the non-accomplice evidence concerning the July 18 offenses.  Instead, it cited two cases[17] addressing the harm analysis attendant to a judge's failure to sever consolidated offenses for trial, an issue the court of appeals explicitly did not address.[18]  Because we conclude the reliable non-accomplice evidence overwhelmingly connects Isbell to the July 18 offenses, we hold that he was not egregiously harmed by the accomplice-witness instructions' omission as to those offenses.

## III.

Therefore, we affirm the court of appeals' judgments as to Isbell's aggravated assault on a public servant and deadly conduct convictions in cause numbers PD-0471-15 and PD-0472-15.  We reverse the court of appeals' judgments as to the evading arrest or detention with a vehicle and aggravated assault on a public servant convictions in cause numbers PD-0469-15 and PD-0470-15 and remand those causes to the court of appeals to

---

[16]  Isbell Brief in Court of Appeals at 18.

[17]  *Llamas v. State*, 12 S.W.3d 469, 471–72 (Tex. Crim. App. 2000); *Wedlow v. State*, 807 S.W.2d 847, 852 (Tex. App.—Dallas 1991, no pet.).

[18]  *Id.* at *2 ("[B]ecause of our disposition of issue two, we need not conduct a harm analysis on Appellant's first issue.").

address Isbell's remaining points of error.

DELIVERED: November 2, 2016

DO NOT PUBLISH