John Patrick **WARMOWSKI**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 1224–91.

Court of Criminal Appeals of Texas, En Banc.

May 12, 1993.

William J. Salyer, San Antonio, for appellant.

Steven C. Hilbig, Dist. Atty., and Priscilla Garcia, Mary Lou Castillo and Daniel Thornberry, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was separately indicted for possession of methamphetamine and possession of cocaine. The two indictments were consolidated for trial, despite appellant's objection pursuant to V.T.C.A. Penal Code, § 3.04(a).[1] Punishment was assessed by the trial court at ten years probation and a five hundred dollar fine in each cause. A motion in arrest of judgment was filed for each conviction. The trial judge granted the motion only as to the conviction for possession of cocaine.

Appellant's conviction for the methamphetamine possession was reversed by the Fourth Court of Appeals on August 30, 1991. On October 9, 1991, the court of appeals withdrew its initial opinion and issued a new one, again reversing the trial court's judgment. See *Warmowski v. State*, 818 S.W.2d 505 (Tex.App.1991). Justice Peeples dissented. We granted the State's petition for discretionary review to examine the court of appeals' holding that the trial court's failure to sever the two cases pursuant to § 3.04(a), supra, was reversible error not subject to a harm analysis pursuant to Tex.R.App.Pro., Rule 81(b)(2).[2] See Tex.R.App.Pro., Rule 200(c)(2) & (5).

■ The court of appeals relied on case law preceding the enactment of Rule 81(b)(2), supra, holding that mandatory language in § 3.04(a), supra, if not complied with, results in reversal. See, e.g., *Overton v. State*, 552 S.W.2d 849 (Tex.Cr.App. 1977); *Waythe v. State*, 533 S.W.2d 802 (Tex.Cr.App.1976). In *Overton*, this Court held that "when a request is made to sever, the trial court must grant the request, and failure to do so results in reversible error...." *Id.* at 850. Similarly, in *Waythe*, this court held that the word "shall" cre-

---

1. § 3.04(a) reads:

    "Whenever two or more offenses have been consolidated or joined for trial under Section 3.02 of this code, the defendant shall have a right to a severance of the offenses."

2. Rule 81(b)(2) reads:

    "If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."

ates no ambiguity but is a "command by the law-making body which we must enforce." *Id.* at 804. The court of appeals cited *Wedlow v. State*, 807 S.W.2d 847 (Tex.App.—Dallas 1991, pet. ref'd) as authority for the proposition that despite enactment of Rule 81(b)(2), supra, a harm analysis was not required when § 3.04, supra, was violated.[3] The court of appeals also analogized § 3.04, supra, to Article 28.10, V.A.C.C.P. which this Court has held is not subject to a harm analysis. See, e.g., *Beebe v. State*, 811 S.W.2d 604 (Tex.Cr. App.1991); *Sodipo v. State*, 815 S.W.2d 551 (Tex.Cr.App.1990).

The State concedes in its petition for discretionary review that appellant was entitled to a severance of the two indictments when he objected at trial pursuant to § 3.04(a), supra; however, the State is unwilling to concede that the language of § 3.04(a), supra, mandates an automatic reversal for failure to comply, without resort to an analysis for harm. The State argues that *Waythe* and *Overton* were decided prior to enactment of Rule 81(b)(2), supra, and are factually distinguishable. Additionally, the State argues that failure to sever an indictment should be subject to a harm analysis just as misjoinder of offenses in a single indictment has been held to be. See *Ponder v. State*, 745 S.W.2d 372 (Tex.Cr.App.1988); *Sifford v. State*, 741 S.W.2d 440 (Tex.Cr.App.1987). Finally, the State argues that we have erred to hold in prior decisions that a lack of concrete data from which to gauge harmfulness, *vel non*, counsels that Rule 81(b)(2) should not apply. Rather, the State argues, that circumstance should simply result in a holding in the particular case that the State has failed to meet its burden under the rule to demonstrate harmlessness. See *Marin v.*

*State*, 801 S.W.2d 944, at 947, n. 3 (Tex. App.—Austin 1990) (Plurality opinion).[4]

In *Waythe* and *Overton*, both supra, this Court characterized the right to severance upon request under § 3.04(a), supra, as mandatory, and held failure to abide it "reversible error." Otherwise, we did not expressly address the question of applicability of a harm analysis. These decisions predate Rule 81(b)(2), which on its face applies whenever "the appellate record reveals error in the proceedings below[.]" Despite this apparent breadth of application, in *Roberts v. State*, 784 S.W.2d 430 (Tex.Cr.App.1990), we suggested that some classes of error may not be susceptible to an analysis for harm under Rule 81(b)(2) after all. We pointed out that prior to the rule "[v]iolation of some procedural provisions, 'mandatory' in nature, was held by the Court to justify reversal of the conviction without an inquiry into harmfulness, *vel non*, of the error." [5] *Id.*, at 435. However, in *Roberts* itself we made it clear that applicability of a Rule 81(b)(2) harm analysis is not a function of mandatoriness, *per se*. Instead we suggested that application of the rule is contingent upon whether the requirement of the procedural statute is such that the record will contain "concrete data from which an appellate court can meaningfully gauge the likelihood that the error did or did not contribute to the conviction or punishment of the accused." *Id.* We have since held that violations of various provisions of Article 28.10, V.A.C.C.P., are not subject to Rule 81(b)(2) harm analysis "because the record will not reveal any concrete data from which an appellate court can meaningfully gauge or quantify the effect of the error." *Beebe v. State*, supra, at 606, quoting *Sodipo v. State*, at 554 (Opinion on original submission). See also *Hillin v. State*, 808 S.W.2d 486 (Tex.

---

3. The court of appeals in *Wedlow* held alternatively that the error was not harmless. This Court refused the State's petition for discretionary review, with disclaimer. See *Wedlow v. State*, 814 S.W.2d 750 (Tex.Cr.App.1991).

4. We have since reviewed the court of appeals' decision in *Marin* on petition for discretionary review and issued an opinion therein. See *Marin v. State*, 851 S.W.2d 275 (Tex.Cr.App.1993)

(State's motion for rehearing refused April 14, 1993). See our discussion in text, infra.

5. We observed that "[a] ready example is violation of Article 35.11, V.A.C.C.P., the jury shuffle statute. E.g., *Smith v. State*, 648 S.W.2d 695 (Tex.Cr.App.1983)." *Roberts*, supra, at 435. See also *Woerner v. State*, 523 S.W.2d 717 (Tex.Cr. App.1975); *Moore v. State*, 132 Tex.Cr.R. 403, 105 S.W.2d 250 (1937).

Cr.App.1991); *Brown v. State,* 828 S.W.2d 762 (Tex.Cr.App.1991). And in *Nunfio v. State,* 808 S.W.2d 482, at 485 (Tex.Cr.App. 1991), we held similarly that error in disallowing a proper question during voir dire was not susceptible to a harm analysis under Rule 81(b)(2) because there is no way to measure how denial of the intelligent use of peremptory challenges might contribute to conviction or punishment.

■ The point is well taken that if the nature of an error is such that the record will not provide a basis for estimating its contribution to conviction or punishment, it does not matter whether we declare the error subject to a harm analysis or not— the result will invariably be the same. As beneficiary of the error, the State has the burden to demonstrate harmlessness. *Arnold v. State,* 786 S.W.2d 295, at 298 (Tex. Cr.App.1990). On a record from which the likelihood of harm cannot meaningfully be estimated, the State will be unable to satisfy its burden. Nevertheless, on discretionary review of the very case the State cites in support of this argument, this Court took an altogether different tack. In *Marin v. State,* 851 S.W.2d 275 (Tex.Cr.App. 1993) (State's motion for rehearing denied April 14, 1993), we observed that there are certain "prophylactic procedural rules designed, in most cases by the Legislature, to impose a uniform requirement where the fairness of a flexible rule is too uncertain." *Id.,* at 281. "Speculation about the possible effect of ignoring [such] prophylactic procedural rules ... is always a perverse and inappropriate application of the harmless error doctrine." *Id.* Thus we declined to construe Rule 81(b)(2) to require an appellate court to indulge in the necessarily speculative enterprise of deciding whether violation of a prophylactic procedural rule may in fact prove harmless beyond a reasonable doubt where it is clear the Legislature regarded the question of harm inhering in a failure to follow that procedure as "too inscrutable for individual decision in the first place." *Id.,* at 281–82.

We regard § 3.04(a) to be just such a prophylactic procedural rule. The Legislature has invested absolute discretion in the defendant to make the decision whether the consolidation of offenses pursuant to V.T.C.A. Penal Code, § 3.02, will work to his detriment at trial. The defendant must decide whether the disadvantage of consolidation outweighs the risk of consecutive sentences in the event he exercises his right to sever. § 3.04(b), supra. Having thus in effect placed the critical decision as to the harmfulness of consolidation in the hands of the defendant, the Legislature can not have intended for an appellate court to second guess that discretion on a case-by-case basis by declaring the failure to grant his requested severance to be harmless beyond a reasonable doubt. The Legislature has put the somewhat "inscrutable" question of potential harm to the defendant himself, providing that he suffer the consequences, one way or the other, of his decision. It would be anomalous to take away the benefit of that absolute discretion, by invoking Rule 81(b)(2) on appeal, while the defendant still risks the adverse consequences of his decision in the form of possible consecutive sentences. Moreover, as is the case with many prophylactic rules of procedure, "subjecting the matter to determination on a case-by-case basis is unlikely to yield acceptable results because the question is empirically difficult and calls for a value judgment." *Marin v. State,* supra, at 282. We conclude that by § 3.04(a) the Legislature meant "to impose a uniform requirement where the fairness of a flexible rule is too uncertain." *Id.*

The State contends that disposition of this cause ought to be controlled, at least in principle, by our decisions in *Sifford v. State,* and *Ponder v. State,* both supra. *Sifford* and *Ponder* were both tried prior to the effective date of Rule 81(b)(2). Nevertheless, they stand for the proposition that in many cases the record will in fact provide an adequate basis to decide whether misjoinder error is harmful beyond a reasonable doubt. Because misjoinder error under Article 21.24, V.A.C.C.P. is similar in nature to a failure to consolidate under § 3.04(a), it would appear that *Sifford* and *Ponder* indeed provide an apt analogy.

Sifford was charged in a single indictment with two offenses not properly joined according to Article 21.24, V.A.C.C.P., as it read at that time. He filed a motion to quash on account of this misjoinder, but the trial court withheld ruling on the motion until after the State had presented its case in chief and elected to proceed on only one of the alleged offenses. Upon the State's election, the trial court denied Sifford's motion to quash. We held that with the election by the State "any misjoinder was cured. *Campbell v. State*, 163 Tex. Cr.R. 545, 294 S.W.2d 125 (1956)." *Sifford v. State*, supra, at 441. See also *Callins v. State*, 780 S.W.2d 176, at 183 (Tex.Cr.App. 1986) (Opinion on original submission). That a State's election can "cure" misjoinder error suggests that misjoinder has little to do with prosecuting more than one offense in a single proceeding and more to do with obtaining more than one conviction from a single charging instrument.[6] See also *Fortune v. State*, 745 S.W.2d 364 (Tex. Cr.App.1988).

Despite having ruled that election by the State "cured" the misjoinder error, however, the Court in *Sifford* continued on to address the question whether harm emanated from admission at trial of evidence pertaining to two offenses instead of one. Both offenses had been committed in a single transaction. For this reason, the Court concluded, evidence as to both offenses would have been admitted in prosecution of either one separately, under the rubric of context-of-the-offense. *Id.*, at 441. Thus, Sifford suffered no injury in the dual prosecution.

In *Ponder v. State*, supra, we had no occasion to invoke the language of curativeness. There the defendant also complained of misjoinder of offenses in a motion to quash the indictment. Although the State was not required, as in *Sifford*, to elect which offense to proceed on at the close of its case-in-chief, the trial court's charge limited the jury to a single conviction. We held that error in failing to grant the motion to quash was harmless, both because only one conviction resulted, and again, because both offenses could have been proven in a prosecution for either one, under the doctrine of res gestae. 745 S.W.2d at 374.

Thus we have recognized that misjoinder is at least partly to be understood as error in allowing the prosecution of more than one offense at the same time, not simply pleading more than one offense and obtaining multiple convictions. The State is correct to maintain, then, that the principle that misjoinder of offenses under Article 21.24 is subject to a harm analysis would seem to apply analogically to a failure to grant a severance. However, since *Sifford* and *Ponder* were decided, *Marin* was handed down. Under *Marin*, that violation of a procedural rule may rationally be subjected to a harm analysis does not mean that Rule 81(b)(2) applies. We must ask whether the procedural rule itself is of a kind that individual inquiry into the harmfulness of a particular violation is worth the candle.

Harmfulness of a violation of § 3.04(a), supra, does not lend itself readily to empirical examination, *Sifford* and *Ponder* not-

6. This impression is fortified by our opinion in *Coleman v. State*, 788 S.W.2d 369 (Tex.Cr.App. 1990). In *Coleman* the defendant was charged in a single indictment with two counts of aggravated robbery, a permissible joinder of offenses under Article 21.24, supra, as it then read. He was convicted separately for each offense and appealed, contending that the trial court erred in failing to grant his motion to sever under § 3.04, supra. The court of appeals agreed, and reversed one of the two convictions and remanded it for separate trial. This Court entertained petitions for discretionary review from both Coleman and the State. Coleman argued that the court of appeals should have reversed both convictions, contending that each was

tainted from having been prosecuted at the same time as the other. In its petition the State maintained that Coleman had not moved for a severance at all under § 3.04, supra, but had requested no more than an election of offenses by the State. We agreed with the State, and, because the offenses were not improperly joined under Article 21.24, supra, held that Coleman was not entitled to an election, and that the court of appeals had therefore erred even to reverse one conviction. Thus we made clear in *Coleman* that a request for the very action that is said to "cure" misjoinder error—election by the State—is not even sufficient to *preserve* purported error in failing to grant a severance.

withstanding. In his dissenting opinion in *Sifford*, Judge Teague leveled the following criticism of the majority's holding that because evidence of both offenses would in any event be admissible at Sifford's trial, the misjoinder was harmless:

"Offering evidence of an extraneous transaction, criminal or otherwise, to help prove an element of the charged offense is rather a different thing than alleging the extraneous offense outright in the indictment. As the Court of Appeals observed, 'the jury was thus allowed to consider that the appellant was on trial for two separate felony offenses, each arising from a separate penal statute, rather than merely the one that the State elected to pursue to verdict.' No doubt, being the practical men that they are, the majority perceives no chance that the jury would actually view the difference so 'technically.' Yet it seems likely to me that even rational jurors would make a distinction between a formal allegation of robbery and the evidence here offered to support it.

Initially, pleading the separate offense as a distinct count of the indictment obviates the need for any further determination of its admissibility. The evidence comes in automatically. Furthermore, it goes to the jury at face value and for all purposes, without the usual limiting instructions. Finally, apart from the strategic benefits thus inuring to the prosecution, the accused is legally disadvantaged. He may not freely admit the extraneous matter in his own testimony, hoping to deflate prejudicial inferences, since he has been placed formally in jeopardy of conviction and punishment for it. None of these considerations attend the ordinary case, where the evidence of an extraneous offense is admitted solely to illuminate the charged offense, and not to enlarge the defendant's jeopardy."

*Sifford v. State*, supra, at 442–43 (Teague, J., dissenting). The benefits to the State and disadvantages to the accused thus identified by Judge Teague are just as real when multiple offenses are consolidated for trial despite a motion for severance under § 3.04 as when they are erroneously joined in a single charging instrument, as in *Sifford*. Yet it is impossible to determine from the perspective of appellate review how the presence of multiple formal charges might or might not have contributed to the outcome of a given case.

Moreover, the certainty with which the Court was able to conclude in *Sifford* and *Ponder* that a same-transaction extraneous offense would be admissible anyway even in a properly severed prosecution has been greatly reduced. This is true because under the auspices of the Rules of Criminal Evidence, this Court has narrowed its view of the admissibility of so-called "res gestae" extraneous offenses. We recently held that admission of evidence of "other crimes, wrongs, or acts" committed during the same transaction as the charged offense, where that evidence serves no other purpose under Tex.R.Cr.Evid., Rule 404(b), would be limited to those without which a coherent picture of the charged offense would be impossible, i.e., those that must be admitted of "necessity." *Rogers v. State*, 853 S.W.2d 29 (Tex.Cr.App.1993) (State's motion for rehearing denied this day) (at 33). Under *Rogers*, same-transaction extraneous offenses will not invariably be admissible in spite of misjoinder or failure to sever, as seems to have been the assumption under our former "res gestae" caselaw, and in *Sifford* and *Ponder*.

This makes the job of the appellate court, in deciding whether lack of harm has been shown beyond a reasonable doubt, that much more speculative. In deciding whether error in failing to grant a severance is harmless, an appellate court can only conjecture that the State would have tendered the additional offense at all. Assuming that it would have, the appellate court still must decide whether proof of the additional offense would have been admissible by "necessity," *Rogers v. State*, supra, or, failing that, by what theory of relevance apart from character conformity the State might have tendered it under Rule 404(b). Positing some theory of relevance apart from character conformity, the appellate court would yet have to determine whether it would have been within the trial judge's

discretion to accept that theory of relevancy, and furthermore, whether he would have exercised his discretion to hold, under Tex.R.Cr.Evid., Rule 403, that it was not inadmissible anyway, as unfairly prejudicial, confusing or cumulative. *Montgomery v. State*, 810 S.W.2d 372, at 387 (Tex.Cr.App.1990) Of course, because of his failure to grant the severance, the trial judge was never even called upon to make any of these decisions.

In our view, in enacting § 3.04(a), supra, the Legislature has given the question of the harmfulness of consolidation of offenses to the accused to decide. Because we conclude that "the ultimate consequence" of failing to grant a requested severance "defies empirical examination on the basis of a typical appellate record alone," *Marin v. State*, supra, at 282, we hold that Rule 81(b)(2) does not apply to this error. Accordingly, we affirm the judgment of the court of appeals.

WHITE, J., concurs in the result.

McCORMICK, P.J., and CAMPBELL and MILLER, JJ., believing there exist circumstances wherein a harm analysis in matters such as this could be proper, respectfully dissent.