Charles HAIGHT, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 04–01–00781–CR to 04–01–00783–CR.

Court of Appeals of Texas, San Antonio.

Jan. 22, 2003.

Carl A. Parker, Donald W. Dickson, II, Parker & Parks, L.L.P., Austin, for appellant.

Lynn Ellison, District Attorney, 81st Judicial District, Leslie G. Carranza, Assistant District Attorney, Jourdanton, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

Opinion by KAREN ANGELINI, Justice.

Charles Haight appeals his convictions on three indictments of official oppression, TEX. PEN.CODE ANN. § 39.03(a),[1] all arising from the same events. Haight argues that his actions constitute only one offense, and that convicting and punishing him for three offenses subjected him to double jeopardy. Haight also challenges the legal and factual sufficiency of the evidence. Because we find that Haight was subjected to double jeopardy, we reverse and render judgment of acquittal on two of Haight's convictions and affirm the remainder of the judgment of the trial court.

### BACKGROUND

All three indictments for official oppression arose from the same set of events. Haight was patrolling I-35 in LaSalle County in his capacity as a sergeant with the Texas Department of Public Safety. He was working with two DPS troopers, Randy Garcia and David Cabrera. Haight noticed a van following too closely behind a truck, and he pulled it over. The driver of

---

1. The statute reads as follows: "Official Oppression. (a) A public servant acting under color of his office or employment commits an offense if he: (1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful." TEX. PEN. CODE ANN. § 39.03 (Vernon 1994).

the van was Jose Luis Napoles, who was going home to San Antonio with his family. Haight wrote two citations, one for following too closely and one for not having proof of insurance, and asked Napoles to sign them. Napoles asked Haight to give him a warning instead. Haight asked several times for Napoles to sign, but Napoles did not completely understand because Haight spoke in English. Haight called Garcia and Cabrera for help. Cabrera, speaking in Spanish, explained to Napoles what the citations were for. Cabrera also explained that the citations were promises to appear and not admissions of guilt, and that Napoles could leave once he signed.

What began as a traffic stop became a violent arrest. As Napoles may have been about to sign the citations, Haight told him it was too late, and took the clipboard and pen from his hands. Haight then ordered him to turn around and put his hands behind his back. Napoles complied, and Haight handcuffed him and pushed him against the car. Then, Haight pulled back on his arms and rammed his head into the side of the patrol car. The impacts left two half-dollar-sized dents in the door. Finally, Haight dropped him to the ground on his knees and kicked him in the back. Haight took Napoles to the LaSalle County Jail and booked him for the two citations and for resisting arrest. The deputy at the jail testified that she noticed a red, swollen bump on Napoles's head, and the emergency medical technician who treated Napoles in his cell noticed bruising and swelling on his back. The next day, Napoles also sought treatment at a San Antonio hospital.

Based on these events, a grand jury returned three indictments against Haight. The first indictment, which Haight's brief terms the "unlawful arrest" indictment, reads as follows:

Intentionally subject Jose Luis Napoles to an arrest that the defendant knew was unlawful, and the defendant was then and there acting under color of his employment as a public servant, namely, a peace officer for the Texas Department of Public Safety.

The second indictment, dubbed the "mistreatment" indictment, states:

Intentionally subject Jose Luis Napoles to mistreatment that the defendant knew was unlawful, to-wit causing Jose Luis Napoles to strike a motor vehicle, and the defendant was then and there acting under color of his employment as a public servant, namely a peace officer for the Texas Department of Public Safety.

Finally, the third indictment, called the "bodily injury" indictment, charged him as follows:

COUNT 1, PARAGRAPH A

Intentionally or knowingly cause bodily injury to Jose Luis Napoles by causing Jose Luis Napoles to strike a motor vehicle and the defendant was then and there acting under color of his employment as a public servant, namely, a peace officer for the Texas Department of Public Safety.

COUNT 1, PARAGRAPH B

Intentionally, knowingly or recklessly cause bodily injury to Jose Luis Napoles by causing Jose Luis Napoles to strike a motor vehicle.

Before trial, Haight filed a motion to quash the indictments. The motion was denied. After the State rested its case, Haight made two motions. First, he moved for an instructed verdict on the unlawful arrest indictment. The trial court denied the motion, relying on Napoles's testimony that he was about to sign the citation when Haight took it from his hand. Second, Haight challenged the bodily injury indictment, arguing that it did

not state an offense under the statute. The trial court denied this motion because Haight had raised the same argument in his unsuccessful motion to quash the indictment.

A jury convicted Haight on all three indictments. On each offense, Haight received a sentence of six months in jail and a $2000 fine. Haight appeals all three judgments.

## DOUBLE JEOPARDY

Haight argues that his actions constitute only one offense, and that by convicting and punishing him for three offenses, the trial court subjected him to double jeopardy. The proper remedy, he contends, is to remand for a new trial on one indictment. His double jeopardy claim has merit, and we reverse and render judgments of acquittal on two of the convictions.

We first must determine what type of double jeopardy analysis to apply. The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Cervantes v. State,* 815 S.W.2d 569, 572 (Tex.Crim.App.1991) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). The classic test of whether a defendant received multiple punishments for the same offense comes from *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932): "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. 180; *see also Mizell v. State,* 70 S.W.3d 156, 160 (Tex. App.-San Antonio 2001, pet. granted) (find-

ing that convicting the defendant of both official oppression and violation of an inmate's civil rights did not violate double jeopardy because each offense contains an element that the other does not). However, we apply a different test when there is only one applicable statutory provision.

## 1. The Allowable Unit of Prosecution

When the defendant's conduct allegedly violated the same statute more than once, we must determine whether the conduct constituted more than one offense under the statute. *Bailey v. State,* 44 S.W.3d 690, 693 (Tex.App.-Houston [14th Dist.] 2001), *aff'd,* 87 S.W.3d 122 (Tex. Crim.App.2002). The legislature defines whether offenses are the same by setting the "allowable unit of prosecution." *Ex parte Hawkins,* 6 S.W.3d 554, 556 (Tex. Crim.App.1999). As a result, "the discovery of the allowable unit of prosecution is a task of statutory construction." *Id.* at 556–57; *see also Sanabria v. United States,* 437 U.S. 54, 69–70, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). The first step is to look at the language of the statute itself.

Under the official oppression statute, a person commits an offense if he or she is a public servant acting under color of his or her office or employment and he or she intentionally commits one of a list of acts: "subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful." TEX. PEN.CODE ANN. § 39.03(a)(1) (Vernon 1994). The allowable unit of prosecution consists of the commission of the underlying act. *See Bailey,* 44 S.W.3d at 693–94 (determining the allowable unit of prosecution for organized criminal activity based on the underlying offense of theft).

In this case, each of the three indictments specified an underlying act. First,

the unlawful arrest indictment specified this underlying act: to "subject Jose Luis Napoles to an arrest that the defendant knew was unlawful." Next, the mistreatment indictment named the act: to "subject Jose Luis Napoles to mistreatment that the defendant knew was unlawful, to-wit causing Jose Luis Napoles to strike a motor vehicle." Lastly, using the same language in both paragraphs, the bodily injury indictment designated the act: to "cause bodily injury to Jose Luis Napoles by causing Jose Luis Napoles to strike a motor vehicle." Next, we determine the allowable unit of prosecution for unlawful arrest, mistreatment, and bodily injury.

■ Statutory construction applies again, this time to find the allowable unit of prosecution for each underlying act. *See Hawkins*, 6 S.W.3d at 559. The unlawful arrest act resembles the criminal offense of unlawful restraint. *See* TEX. PEN.CODE ANN. § 20.02 (Vernon Supp. 2002).[2] The mistreatment and bodily injury acts resemble the criminal offense of assault. *See id.* § 22.01.[3] Both the unlawful restraint and assault offenses are fundamentally assaultive. *Cf. Hawkins*, 6 S.W.3d at 560 (finding that robbery is essentially a form of assault). For assault-type offenses, the allowable unit of prosecution is the victim. *Id.* In this case, because the victim is the allowable unit of prosecution for the relevant underlying acts, the allowable unit of prosecution for the offense of official oppression is also the victim.

Each of three indictments lists the same victim: Napoles. One victim constitutes only one allowable unit of prosecution. Because the indictments state only one allowable unit of prosecution, Haight can be convicted of only one offense. Convicting Haight of three offenses of official oppression subjected him to double jeopardy. We reverse and render judgments of acquittal on two of the convictions. Since the offenses and punishments are the same for all three, we reverse all but the judgment that is first in number—in this case, the unlawful arrest conviction. *Cf. Nickerson v. State*, 69 S.W.3d 661, 671 (Tex.App.-Waco 2002, pet. ref'd) (upholding the first conviction listed in the judgment).

### 2. Harmless Error Analysis

Rather than affirm the remaining conviction, Haight argues that we should remand the remaining conviction for a new trial. Specifically, he contends that submitting all three indictments to the jury was an error that is not susceptible to a harm analysis. On the contrary, we find that harmless error analysis does apply. The error was harmless, and we affirm the single remaining conviction.

#### a. Not Structural Error

■ Harmless error analysis applies to all kinds of error except certain types of federal constitutional error that the United States Supreme Court terms "structural." *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim.App.1997). The recognized examples of structural error include: complete denial of counsel at trial, a biased judge, a

---

2. The statute reads as follows: "Unlawful Restraint. (a) A person commits an offense if he intentionally or knowingly restrains another person.... (d) It is no offense to detain or move another under this section when it is for the purpose of effecting a lawful arrest or detaining an individual lawfully arrested." TEX. PEN.CODE ANN. § 20.02 (Vernon Supp. 2002).

3. The statute provides: "Assault. (a) A person commits an offense if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another...." TEX. PEN.CODE ANN. § 22.01 (Vernon Supp.2002).

grand jury from which members of the accused's race are unlawfully excluded, deprivation of the right of self-representation at trial, and denial of the public trial right. *See Ex parte Fierro,* 934 S.W.2d 370, 372 (Tex.Crim.App.1996). Haight concedes that no decided cases have recognized double jeopardy violations as structural error, and we decline to do so here.[4]

### b. The Error Is Susceptible to Harm Analysis

■■■■■ If the record reveals constitutional error, and we cannot determine beyond a reasonable doubt that the error did not contribute to the conviction, then we must reverse. Tex.R.App. P. 44.2(a). Some types of error, however, cannot be proven harmless beyond a reasonable doubt, namely: "where the error defies analysis by harmless error standards or the data is insufficient to conduct a meaningful harmful error analysis." *Cain,* 947 S.W.2d at 264.

■■■■■ Haight points to the denial of a motion to sever as an example of an error that defies harmless error analysis. A meaningful harmless error analysis is not possible in severance cases because the record cannot show the full impact of a consolidated trial. *See Warmowski v. State,* 853 S.W.2d 575, 580–81 (Tex.Crim. App.1993). If multiple offenses are consolidated for trial, the defendant has the right to file a motion to sever and have the offenses tried separately. Tex. Pen.Code Ann. § 3.04(a) (Vernon Supp.2002); *see Wedlow v. State,* 807 S.W.2d 847, 851 (Tex. App.-Dallas), *pet. ref'd,* 814 S.W.2d 750 (Tex.Crim.App.1991) (discussing the common law right to severance).

■■■■■ By choosing severance, the defendant runs the risk of facing consecutive sentences if he is found guilty of both offenses, but he may improve his chances of acquittal by defending against only one offense at a time. *See Warmowski,* 853 S.W.2d at 578. The dangers of a consolidated trial include the risk that the jury will label the defendant as a bad person who deserves punishment because of the other offenses he or she has committed and the risk that the jury will infer that the defendant committed the offense charged because he or she also committed other offenses. *See Llamas v. State,* 12 S.W.3d 469, 471–72 (Tex.Crim.App.2000). Also, in a consolidated trial, evidence of both offenses is admitted automatically, whereas in a trial for one offense, evidence of another offense committed during the same transaction may or may not be admitted as res gestae of the first offense. *See Warmowski,* 853 S.W.2d at 580. Finally, the mere presence of formal charges for multiple offenses may influence the jury. *Id.* An appellate court would have to make too many inferences and speculations to evaluate the harmfulness of a trial court's erroneous denial of a motion to sever.

These dangers were not present in Haight's trial because the three indictments only stated one offense. The jury, therefore, could not use other offenses to label Haight a bad person. They could not use the commission of other offenses to infer that Haight committed another offense. They did not hear evidence of other offenses that would otherwise be inadmissible. The jury saw three indictments, but all three concerned the same offense. Because only one offense is involved, it is not necessary to make inferences and

---

4. The list of examples of structural error does not include the denial of a motion to sever. *See Llamas v. State,* 12 S.W.3d 469, 470 (Tex. Crim.App.2000). Although the denial of a motion to sever is not structural error, it is still impossible to conduct a meaningful harmful error analysis of the denial of a motion to sever. *Id.* at 471; *see infra.*

speculations to evaluate the harmfulness of the trial court's error. Unlike the severance cases, the error in this case is susceptible to harmless error analysis.

### c. The Error Was Harmless

▉▉▉▉ The trial court's error allowed the jury to see three indictments for official oppression instead of just one. If the jury had seen only one indictment, would they still have convicted Haight of official oppression? We believe so. Harmless error is error that does not contribute to the conviction. Tex.R.App. P. 44.2(a). Error does not contribute to the conviction if the record contains overwhelming evidence that dissipates the error's effect on the jury's factual determination. *See Devis v. State*, 18 S.W.3d 777, 784 (Tex.App.-San Antonio 2000, no pet.).

The evidence in this record is overwhelming: multiple witnesses, including Haight's fellow officers, agreed that Haight caused Napoles's head to strike the side of the patrol car. In addition, the testimony showed that Haight kicked Napoles in the back while he was handcuffed and on the ground. The witnesses also observed the two dents in the door and noted Napoles's injuries after his arrest. Finally, the record shows that Napoles may have intended to sign the citations before Haight took the clipboard away from him and arrested him. We conclude that the error did not contribute to the conviction and was therefore harmless. Our final task is to evaluate Haight's legal and factual sufficiency claims.

### Sufficiency of the Evidence

▉▉▉▉ Haight also challenges the legal and factual sufficiency of the evidence. Specifically, Haight argues that the State failed to prove that the arrest was unlawful. In addition, Haight argues that there is insufficient evidence that he mistreated or injured Napoles. We find no merit in

Haight's insufficiency claims. We review the sufficiency of the evidence for all three convictions, even those that we reversed above on double jeopardy grounds. *See McFarland v. State*, 930 S.W.2d 99, 100 (Tex.Crim.App.1996).

▉▉▉▉ In reviewing for legal sufficiency, we look at all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If we determine that the evidence is legally insufficient, then we must render a judgment of acquittal. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996). In effect, a claim of legal insufficiency is an argument that the case never should have been presented to the jury. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001).

▉▉▉▉ In reviewing for factual sufficiency, we look at all of the evidence in a neutral light, and will reverse only if the evidence supporting guilt is so obviously weak as to undermine confidence in the jury's verdict, or if the evidence supporting guilt—although adequate when taken alone—is greatly outweighed by the contrary evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). We will set aside the verdict only.if it so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Wesbrook*, 29 S.W.3d at 112. If we determine that the evidence is factually insufficient, then we must vacate the conviction and remand the cause for a new trial. *Clewis*, 922 S.W.2d at 133–34. The reviewing court should not substantially intrude upon the jury's role as the sole determiner of the weight and credibility of

testimony. *Vasquez v. State,* 67 S.W.3d 229, 236 (Tex.Crim.App.2002).

 The record contains legally and factually sufficient evidence of an unlawful arrest to support Haight's first conviction for official oppression. In general, arrests supported by probable cause or a warrant are lawful unless there were extraordinary circumstances. *See Atwater v. City of Lago Vista,* 532 U.S. 318, 352–53, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) ("[U]nder current doctrine the preference for categorical treatment of Fourth Amendment claims gives way to individualized review when a defendant makes a colorable argument that an arrest, with or without a warrant, was 'conducted in an extraordinary manner, unusually harmful to [his] privacy or even physical interests.'" (quoting *Whren v. United States,* 517 U.S. 806, 818, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996))). Here, the circumstances of the arrest were extraordinary: several witnesses testified that Haight hit Napoles's head against the side of the patrol car more than once. They also testified that Haight kicked Napoles in the back while he was handcuffed and on the ground. Furthermore, the arrest may have been unnecessary; more than one witness testified that Haight took the clipboard and pen away from Napoles as he was about to sign the citations.

The mistreatment and bodily injury convictions are also supported by sufficient evidence. The same evidence that made the arrest unlawful—the testimony about Haight striking Napoles's head against the car door and kicking him in the back—also proves that Haight mistreated Napoles and caused bodily injury to him. Other evidence of injury includes Napoles's San Antonio hospital records, the testimony of the emergency medical technician who treated Napoles in jail, and the observations of the LaSalle County sheriff's depu-

ty who noticed a bump on Napoles's head when she booked him. The evidence supporting guilt is not so obviously weak as to undermine confidence in the jury's verdict, nor is the evidence greatly outweighed by the contrary evidence. *See Johnson,* 23 S.W.3d at 11. The evidence would be legally and factually sufficient to affirm all three convictions, if not for the double jeopardy issue discussed above.

### CONCLUSION

We reverse and render judgments of acquittal on the mistreatment indictment, 99–09–0068–CRL, and the bodily injury indictment, 99–09–00069–CRL, and affirm the trial court's judgment on the unlawful arrest indictment, 99–09–00067–CRL.