Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion Issued
June 19, 2008

 

 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NOS. 01-06-00948-CR

          01-06-00998-CR

          01-06-00999-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



DENNIS JAMES POLEDORE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 240th District Court

Fort Bend County, Texas








Trial Court Cause Nos. 42537B, 42538B, 42527B

 

 



MEMORANDUM OPINION

          Appellant, Dennis James
Poledore, pleaded not guilty to three separate offenses of aggravated assault
with a deadly weapon.  See Tex.
Penal Code Ann. § 22.02 (Vernon 2006).  The jury found Smith guilty of
each offense, and upon finding true two enhancements included in the
indictments, the trial court sentenced Poledore to sixty years’ confinement in
each case.  In three issues, Poledore contends the trial court erred in (1)
consolidating the three cases together into one trial; (2) denying his request
to charge the jury on a lesser-included offense; and (3) admitting State’s
exhibit eleven.  He further contends that his counsel rendered constitutionally
ineffective assistance.  We affirm.

Background

          In February 2004, Poledore
was doing carpentry work on the house next door to Brenda James.  Poledore and
Brenda developed a friendship, which evolved into a romantic relationship.  In
October 2004, Poledore was in an automobile accident, and Brenda recommended
that he see her son, Derrill James, who is a chiropractor.  During the course
of his treatment, the insurance company mistakenly sent Poledore a check as
payment of medical treatment that was supposed to have been sent to Derrill. 
Derrill contacted Poledore several times in an effort to receive payment to no
avail.  Around April 2005, Brenda ended her relationship with Poledore.  

          On June 24, 2005, Poledore
telephoned Derrill’s office to tell them that he was ready to pay the money. 
Poledore and Derrill arranged to meet at Brenda’s house that afternoon.  When
Poledore arrived at Brenda’s house, he followed her into the kitchen where
Derrill was waiting.  At that point, he withdrew a gun from underneath his
clothes, pointed it at Derrill’s head, and cocked it.  Brenda began begging
Poledore not to do this.  Derrill’s wife, Likeysha, heard the commotion and
came in from the back bedroom.  When Likeysha tried to run away, Poledore
threatened to kill Derrill if she did not return.  Once Likeysha returned,
Poledore made them all lie down on the floor, and he continued to threaten
them.  He then duct-taped their arms and legs.  Poledore threatened to kill
them if they called the police.  Eventually, he decided to let them go, and cut
the duct-tape off Likeysha and Derrill.  He told them to wait five minutes
before leaving, so that he could get away.

          After Likeysha and Derrill
helped free Brenda, they left to pick up Derrill and Likeysha’s son from
daycare.  They did not immediately call the police because of a disagreement
over whether to contact them.  Brenda and Likeysha were afraid to report the
assault but Derrill thought they should.  They stopped by two constable’s
offices on their way back from the daycare center but both were closed.  They
then went to Brenda’s older son’s house in Richmond and phoned the police.  The
 Richmond police informed them that they had to return to the scene of the
crime and call the police from there, which they did.

          At trial, both Brenda and
Derrill identified Poledore as the assailant.  In his defense, Poledore
presented two witnesses who testified to seeing him on the day of the assault
at approximately the same time that Brenda, Derrill, and Likeysha testified it
took place.  Poledore did not testify.

Consolidation of Cases

          In his first issue,
Poledore contends that the trial court erred in trying the offenses together in
a single trial.  He asserts that the State failed to give the required thirty
days’ notice of the consolidated actions.  See Tex. Pen. Code Ann. § 3.02(b).  

The State may prosecute a defendant in a single
criminal action for all offenses arising out of the same criminal episode.  Id. § 3.02(a).  When
the State elects to consolidate prosecution of multiple offenses, “the
defendant shall have a right to a severance of the offenses.” Tex. Pen. Code Ann. § 3.04; Ex parte
McJunkins, 954 S.W.2d 39, 41 (Tex. Crim. App. 1997). A trial court’s failure
to sever despite a defendant’s objection to joinder of cases is reversible
error. See Warmowski v. State, 853 S.W.2d 575, 578 (Tex. Crim. App. 1993).
 The mandatory language of the Penal Code invests absolute discretion in the
defendant to make the decision.  Id.  

Poledore construes section 3.04 to
mean that “a trial court has no right to consolidate indictments in absence of
agreement by the Defendant.”  An indictment,
however, may be consolidated into a single proceeding with the express or
implied (by failure to object) consent of the defendant.  Cervantes v. State, 815 S.W.2d 569, 571 (Tex.
Crim. App. 1991).  Here, Poledore failed to object to consolidation of the
indictments and, thus, he impliedly consented.

Poledore asserts that he objected to
consolidation of the offenses when he filed his special plea of double
jeopardy, in which he objected to the enhancement paragraphs of the new
indictments.  He relies on Rice v. State to support his contention that
an objection on double jeopardy grounds is sufficient to apprise the trial
court of the nature of his complaint and to require severance of the offenses. 
In Rice, the appellant was convicted of aggravated robbery and attempted
capital murder.  See Rice v. State, 646 S.W.2d 633 (Tex. App.—Houston
[1st Dist.] 1983, pet. ref’d).  He contended on appeal that the court erred in
consolidating the two cases.  Id. at 634.  Before entering his pleas of
no contest, Rice objected to the consolidation of the cases, stating that he
objected to the order “in which she granted State’s motion to consolidate those
procedures as being a violation of his rights under double jeopardy.”  Id.  This court held that Rice’s objection was sufficient to apprise the
trial court of the nature of his complaint because it stated an objection to
consolidation; it referred to the trial court’s order; and it bore the cause
numbers of both cases.  Id. at 635.  

Unlike the appellant in Rice,
Poledore, in his special plea, did not object to consolidation of the cases in
any form.  He pleaded a violation of double jeopardy based only upon the
enhancement paragraphs included in the re-indictments, and not based upon
consolidation of the offenses.  In addition, Poledore’s special plea stated
that the offenses “were consolidated pursuant to the Prosecution’s request,”
and did not follow with any objection to that.  The trial court was therefore
not apprised that Poledore objected to consolidation of the offenses, and thus Poledore
waived any complaint by failing to object before trial.  See Tex. Code Crim. Proc.
Ann. art. 1.14(b) (Vernon 2005).  

Jury Charge

          In his second issue,
Poledore contends that the trial court erred in denying his request for a jury
charge instruction on the lesser-included offense of deadly conduct.  See Tex. Penal Code Ann. § 22.05 (Vernon
2006).  

“When reviewing charge
errors, an appellate court must undertake a two-step review: first, the court
must determine whether error actually exists in the charge, and second, the
court must determine whether sufficient harm resulted from the
error to require reversal.”  Abdnor v. State, 871 S.W.2d 726, 731–32
(Tex. Crim. App. 1994).  We use a two-pronged test to determine whether a
defendant is entitled to an instruction on a lesser-included offense.  See
Guzman v. State, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006); Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005).  The first
step is to determine whether an offense is a lesser-included offense of the
alleged offense.  Hall v. State, 225 S.W.3d 524, 535 (Tex. Crim. App.
2007); Salinas, 163 S.W.3d at 741.  This determination is a question of
law and does not depend on the evidence to be produced at the trial.  Hall,
225 S.W.3d at 535.  

An offense is a
lesser-included offense if:


(1) it is established by
proof of the same or less than all the facts required to establish the
commission of the offense charged;


(2) it differs from the
offense charged only in the respect that a less serious injury or risk of
injury to the same person, property, or public interest suffices to establish
its commission;


(3) it differs from the
offense charged only in the respect that a less culpable mental state suffices
to establish its commission; or


(4) it consists of an attempt
to commit the offense charged or an otherwise included offense.



Tex.
Code Crim. Proc. Ann. art. 37.09 (Vernon 2006).  When the greater offense may be
committed in more than one manner, the manner alleged will determine the
availability of lesser-included offenses.  Hall, 225 S.W.3d at 531. 

The second step is to
determine if there is some evidence that would permit a rational jury to find
that the defendant is guilty of the lesser offense but not guilty of the
greater.  Id. at 536; Salinas, 163 S.W.3d at 741; Feldman v. State, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002).  Anything more than a scintilla of evidence may be sufficient to
entitle a defendant to a charge on the lesser offense.  Hall, 225 S.W.3d
at 536.  “[I]t is not enough that the jury may disbelieve crucial evidence
pertaining to the greater offense, but rather, there must be some evidence directly
germane to the lesser-included offense for the finder of fact to consider
before an instruction on a lesser-included offense is warranted.”  Hampton v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003).  We review all evidence presented at
trial to make this determination.  Rousseau v. State, 855 S.W.2d 666,
673 (Tex. Crim. App. 1993).  If the evidence raises the issue of a lesser-included
offense, a jury charge must be given based on that evidence, “whether produced
by the State or the defendant and whether it be strong, weak, unimpeached, or
contradicted.”  Id. at 672 (quoting Bell v. State, 693 S.W.2d
434, 442 (Tex. Crim. App. 1985)).

Assuming deadly conduct is a
lesser-included offense of aggravated assault, there is no evidence in the
record to support a finding that if Poledore is guilty, he is guilty only of
deadly conduct.  The primary difference between aggravated assault with a
deadly weapon and deadly conduct is the culpable mental state.  Aggravated
assault requires that the defendant (1) intentionally or knowingly threaten
another, (2) with imminent bodily injury, (3) while using or exhibiting a
deadly weapon.  See Tex. Pen.
Code Ann. §§ 22.01(a)(2), 22.02(a)(2).  In contrast, deadly conduct
requires that the defendant (1) recklessly engages in conduct (2) that places
another in imminent danger of serious bodily injury.  See id. §
22.05(a).  The deadly conduct statute further provides that “recklessness and
danger are presumed if the actor knowingly pointed a firearm at or in the
direction of another whether or not the actor believed the firearm to be
loaded.”  Id. § 22.05(c).

Poledore contends that there was
evidence from which the jury could reasonably infer that his actions were
reckless.  He points to the witnesses’ testimony that none of them were
familiar with guns and to the fact that the State did not submit the gun into
evidence.  This evidence, however, does not address Poledore’s mental state,
but instead addresses the weight of the evidence.  Poledore also states that
pointing a gun at Derrill James’s head and cocking it “constitutes a reckless
act.”  These actions, however, support a finding of intentional or knowing
conduct, rather than recklessness.  Cocking a gun and holding it to a person’s
head are intentional acts.  Poledore did not present any evidence that
suggested that he did not intend to threaten the Jameses; the evidence supports
only a finding that either (1) Poledore intentionally and knowingly pointed the
gun at the complainants, or (2) Poledore was not present and did not commit the
offense at all.  If a defendant either offers evidence that he committed no
offense or presents no evidence, and there is no evidence showing he is guilty
only of a lesser-included offense, then a charge on a lesser-included offense
is not required. Bignall v. State, 887 S.W.2d 21, 22–24 (Tex. Crim. App.
1994).  Accordingly, the trial court did not err in refusing to submit a deadly
conduct charge.

Exhibit 11

          Poledore contends that the
trial court erred in allowing the State to “enter into evidence State’s exhibit
11 at the punishment phase of the trial when the State failed to prove up that
the prior felony offered for enhancement purposes was final, and when the prior
felony did not have the proper affidavit of cause number conviction attached to
it.”  Because Poledore objects to exhibit 11 for the first time on appeal, he
has waived this objection.  See Tex.
R. App. P. 33.1.  

Ineffective Assistance of Counsel

          In his final issue, Poledore contends
that his counsel rendered constitutionally ineffective assistance.  He
specifically alleges that his counsel was ineffective for failing to (1) make
challenges for cause during voir dire; (2) consult with Poledore before waiving
arraignment; (3) object to certain testimony and evidence; (4) subpoena certain
witnesses; and (5) elicit certain testimony in order to create a bill of
exception.

Standard of Review

To prevail on
a claim of ineffective assistance of counsel, the defendant must show that (1)
his counsel’s performance was deficient and (2) a reasonable probability exists
that the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The first prong of Strickland
requires the defendant to show that counsel’s performance fell below an
objective standard of reasonableness.  Thompson v. State, 9 S.W.3d 808,
812 (Tex. Crim. App. 1999). Thus, the defendant must prove objectively, by a
preponderance of the evidence, that his counsel’s representation fell below
professional standards.  Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).  The second prong requires the defendant to show a reasonable
probability that, but for counsel’s unprofessional errors, the result of the
proceeding would have been different. See Strickland,
466 U.S. at 693–94, 109 S. Ct. at 2067; see also Thompson, 9 S.W.3d at
812. A reviewing court should indulge a strong presumption that counsel’s
conduct falls within the wide range of reasonable professional assistance; that
is, the defendant must also overcome the presumption that, under the
circumstances, the challenged action “might be considered sound trial strategy.”
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. “Any allegation of ineffectiveness
must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness.” Thompson, 9 S.W.3d at 813
(citing McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)).
Under normal circumstances, the record on direct appeal will not be sufficient
to show that counsel’s representation was so deficient and lacking in tactical
or strategic decision making as to overcome the presumption that counsel’s
conduct was reasonable and professional.  Bone v. State, 77 S.W.3d 828,
833 (Tex. Crim. App. 2002).

Analysis

The record in this case does not show
any conduct outside the wide range of reasonable professional assistance. 
Poledore first contends that his counsel was ineffective because he failed to
challenge certain jurors during voir dire and failed to strike anyone.  The
record belies this assertion.  The defense’s strike list includes ten
peremptory strikes and two strikes for cause.  Poledore specifically asserts
that defense counsel should have struck juror numbers 26, 37, 3, 6, and 29 for
responses they provided during voir dire.  Only juror number 6 actually served
on the jury.  The record further reflects that defense counsel struck juror 3
and 26, and the court did not reach jurors 26, 29, and 37, as juror 19 was the
last juror seated.  Poledore points specifically to juror number 6’s response
to defense counsel’s question regarding whether it would affect him if Poledore
did not testify.  Juror 6 stated that it would “be a seed in the back of my
mind,” but he further stated, when asked if he could be fair, “I think so. It
would—still would be there.”  This answer did not support a challenge for
cause.  Moreover, Poledore did not adduce evidence about counsel’s strategy at
a motion for new trial.  The record thus does not show counsel’s reasons for
not striking juror number 6 or challenging him for cause.  We conclude that the
record does not show that counsel’s conduct during the voir dire was
unreasonable trial strategy.[1]  Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994) (without additional evidence in the record concerning trial counsel’s
reasons for not challenging or striking a venire member, court unable to
conclude that counsel’s performance was deficient).

Poledore also alleges that his
counsel amended his waiver of arraignment form without Poledore’s knowledge. 
The clerk’s record contains a waiver of arraignment form with the cause numbers
from the modified indictment.  Both defense counsel’s signature and Poledore’s
signature appear on this amended form.  In addition, defense counsel stated on
the record that he amended the waiver to include the new indictments.  Poledore
was present during this exchange and did not contend that he had no knowledge
of it.  There is no evidence therefore that Poledore was not aware of the
amendment or that counsel was ineffective for amending it.

Poledore next contends that his
counsel failed to make several objections during trial, including objecting to
the State’s opening and closing arguments and objecting to State’s exhibits 1,
2, 8, and 9.  Poledore does not support his contentions with any reasons that
the evidence would have been inadmissible, and does not specifically point to
the portions of opening and closing arguments that he deems objectionable. 
Poledore’s contentions thus do not overcome the presumption that counsel’s
actions were strategic decisions.

Poledore further asserts that his
counsel was ineffective for failing to properly subpoena witnesses that he had
intended to call during both the guilt/innocence and punishment phases. 
Defense counsel subpoenaed two witnesses for the guilt/innocence phase who did
not appear at trial.  One subpoena included the wrong trial date, but defense
counsel notified her by telephone of the correct trial date.  Both witnesses
stated that they did not want to participate.  Defense counsel requested a
continuance in order to ensure his witnesses’ presence in court.  The court
granted a ten-minute recess so that defense counsel could attempt to reach his
witnesses by phone.  After the recess, defense counsel stated that he had
spoken with the witnesses, and they were not going to appear.  Defense counsel
then withdrew his motion for continuance and proceeded with the trial.  

“To obtain relief on an ineffective
assistance of counsel claim based on an uncalled witness, the applicant must
show that [the witness] had been available to testify and that his testimony
would have been of some benefit to the defense.”  Ex parte
White, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004).  Poledore fails to show
that any of the witnesses he contends defense counsel should have called would
have benefitted his defense, and thus, his ineffective assistance claim cannot
succeed on this ground.

Poledore further contends that his
counsel was ineffective for failing to object to State’s exhibits 10, 11, and
12 because “matters contained within these exhibits clearly made them
objectionable” and if counsel “had properly objected to these enhancement
exhibits, in all likelihood, the Appellant’s punishment range would have been
that of a second degree felony of 2-20 years.”  Poledore does not provide
support for his contention that exhibits 10 and 12 are objectionable.  In
regard to exhibit 11, Poledore contends that it would have been inadmissible
because the cause number listed in the certification did not match the cause
number listed within the pen packet, and because the State did not prove that
it was a final judgment.

Poledore’s indictment included two
enhancement paragraphs.  The first stated that he was convicted of aggravated
robbery in 1984.  The second stated that he was convicted of aggravated robbery
in 1988.  State’s exhibit 11 is a pen packet for Poledore’s 1984 conviction of
aggravated robbery.  It includes an affidavit from the Chairman Classification
and Records for the Texas Department of Criminal Justice, which states that the
packet contains information relating to “Cause # 78479650TK, F8476849TK”; the
documents are actually from cause number “F-84-76850-TK.”  The discrepancy
between the certification cause number and the cause number on the documents is
a technical defect which does not render the packet inadmissible.  Washington
v. State, 905 S.W.2d 665, 668 (Tex. App.—Houston [14th Dist.] 1995, pet.
ref’d).   Furthermore, Texas Rule of Evidence 901(a) provides that the requirement
of authentication “as a condition precedent to admissibility is satisfied by
evidence sufficient to support a finding that the matter in question is what
its proponent claims.”  Tex. R. Evid.
901(a).  Larry Spillers, a fingerprint expert, testified that the fingerprints
on exhibit 11 matched Poledore’s fingerprints.  Spillers’s comparison of the
fingerprint cards corroborates the authenticity of the packet.  See Reed v.
State, 811 S.W.2d 582, 586 (Tex. Crim. App. 1991) (authenticity of the
documents is further corroborated by testimony of State’s expert witness who
stated that fingerprints from the fingerprint card in the pen packet and the
fingerprints taken from appellant were made by the same individual).  Thus, if
Poledore’s counsel had objected on this ground, it would have been overruled.  

Poledore further contends that
State’s exhibit 11 would have been inadmissible because the State failed to
prove that it was a final conviction.  The judgment in the pen packet contained
the notation that “defendant excepts and gives notice of appeal to the Court of
Appeals.”  Nothing in the packet indicates that the conviction had been
affirmed.  

A conviction that has been appealed
is not considered final for the purpose of enhancement until the appellate
court affirms the conviction and issues its mandate.  Beal v. State, 91
S.W.3d 794, 794–95 (Tex. Crim. App. 2002).  The State has the burden to prove
the finality of a conviction that is used for enhancement.  Russell v. State,
790 S.W.2d 655, 657 (Tex. Crim. App. 1990). There is no specific method by
which the State must prove the finality of the prior conviction, and finality
may be proved by an admission by the defendant.  Flowers v. State, 220
S.W.3d 919, 921–22 (Tex. Crim. App. 2007).

In this case, State’s exhibit 12
contained a pen packet from Poledore’s 1988 conviction.  The judgment from that
conviction stated that Poledore pleaded true to the enhancement included in the
indictment which alleged that he had been previously convicted of a felony.  We
hold that this evidence was sufficient to establish the finality of Poledore’s
prior felony conviction for the purpose of enhancement.  Because Poledore’s
objections to exhibit 11 would have been overruled, his counsel was not
ineffective for failing to object.  See Holland v. State, 761 S.W.2d
307, 318–19 (Tex. Crim. App. 1988) (holding that “counsel was under no
obligation to do what would amount to a futile act”).

In his final contention, Poledore
asserts that his counsel was ineffective for failing to obtain Derrill’s
testimony to create a bill of exception.  The record contradicts Poledore’s
assertion.   Defense counsel moved to allow testimony from Derrill concerning
alleged fraudulent insurance claims, and questioned Derrill outside the
presence of the jury about it.  Upon hearing the testimony, the trial court
ruled that it was irrelevant and inadmissible.  The record contains sufficient
testimony to allow an appellate court to rule on the admissibility of this
testimony if Poledore had raised this issue on appeal.  Defense counsel
therefore was not ineffective, as he preserved the testimony in the record. 
For these reasons, we overrule Poledore’s final issue.

Conclusion

We conclude that the trial court did
not err in consolidating the three cases together into one trial or in denying
his request to charge the jury on a lesser-included offense.  We further
conclude that Poledore waived his objection to State’s exhibit 11.  In
addition, we hold that Poledore’s counsel rendered constitutionally effective
assistance.  Accordingly, we affirm the trial court’s judgment.

 

 

                                                                   Jane Bland

                                                                   Justice

 

Panel consists of Justices Taft, Jennings, and Bland.

Do not publish.  Tex. R. App. P. 47.4.

 

 

 









[1]
              Poledore also contends that trial
counsel failed to object to “seven to ten improper commitment questions,” but
does not present any particular questions for review.  Thus, he has not shown
that trial counsel erred in failing to object.